Co-operative Grain & Supply Co. v. Commissioner.
Co-operative Grain & Supply Co. v. Commissioner
Docket No. 6132-64.
United States Tax Court
T.C. Memo 1967-132; 1967 Tax Ct. Memo LEXIS 127; 26 T.C.M. (CCH) 593; T.C.M. (RIA) 67132; June 19, 1967
Robert C. Guenzel, for the petitioner. Ivan L. Onnen, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax, as follows: Additions to Tax,
Sec. 6651(a),
Year
Deficiency
I.R.C. 1954
1958
$12,551.48
1959
17,464.75
$2,619.72
1960
25,405.92
4,988.92
1961
13,930.63
Totals
$69,352.78
$7,608.64
Certain issues have been conceded by the parties prior to the trial proceedings herein. The questions *130 presented for decision are as follows: (1) Was petitioner operated as an exempt farmers' cooperative during each of the taxable years 1958, 1959, 1960, and 1961, under section 521(b), [1] Internal Revenue Code of 1954; (2) May petitioner defer until 1960 storage income in the amount of $7,832.70 received in 1959; and (3) In the event petitioner fails to qualify as an exempt farmers' cooperative for the taxable years 1959 and 1960, is petitioner liable for additions to tax under section 6651(a) for those years. Findings of Fact Some of the facts were stipulated, and the stipulations *131 of facts and exhibits attached thereto are found accordingly. Petitioner is a cooperative organization organized under the laws of Nebraska, with its office and principal place of business at Roseland, Nebraska. It filed its Federal corporate income tax returns on the accrual basis for the calendar years 1958, 1959, 1960, and 1961 with the district director of internal revenue, Omaha, Nebraska (hereinafter referred to as the district director). Pursuant to applications therefor, petitioner was granted extensions of time for filing its income tax returns for the taxable years 1959 and 1960 to June 15, 1960, and June 15, 1961, respectively. Its returns for the taxable years 1959 and 1960 were filed on September 8, 1960, and September 18, 1961, respectively. Petitioner is a marketing and purchasing cooperative dealing in grain and farm supplies. These business activities are carried on in three departments, to wit: (1) Grain (marketing function), (2) Fertilizer and Feed, and (3) Merchandise. (The latter two departments represent petitioner's purchasing function.) Substantially all, if not all, of petitioner's shareholders are farmers, fruit growers, livestock growers, and dairymen. *132 Petitioner's bylaws provide, inter alia: ARTICLE VI Members Section 1. Eligible Members. Any person, firm, partnership, corporation or association, including both Landlords and tenants in share tenancies, who is a bona fide producer of agricultural products in the territory in which the corporation is engaged in business, and who agrees to be a patron of the corporation and agrees to comply with the requirements of its Articles of Incorporation and these bylaws, may become a member of this association by acquiring a share of stock and meeting such conditions as may be prescribed by the board of directors. The rights, powers, liabilities and limitations with regard to ownership of stock is also subject to the provisions of the by-laws then existing or thereafter adopted and to the provisions of the Articles of Incorporation and subsequent amendments thereto. Section 2. Stock Certificates. A Certificate of stock shall be issued to each eligible member when fully paid, which shall be in such form as may be prescribed by the board of directors, but shall not be transferable. Section 3. Ineligibility. If a member shall cease to be a producer or shall cease or refuse to market *133 agricultural products grown or owned by him through the facilities of the corporation, or wilfully fails to comply with these by-laws, or wilfully obstructs the purposes or porper activities of the corporation, the board of directors, following a hearing, at their option, may suspend his rights as a member or terminate his membership in the association. Section 4. Retirement of Stock and other Certificates. Upon the death of a member, or upon the termination of membership as above provided, his stock may be retired as provided in these by-laws. His rights represented by participation certificates, revolving fund certificates or credits, certificates of interest, building certificates or certificates of indebtedness shall be retired only at such times as such retirement would take place had he remained a member, however, at the option of the board of directors, such certificates or credits may be retired in cash. No cation taken hereunder shall impair the obligations or liabilities of either party under any agreements between the corporation and the member. Section 5. Withdrawal. Any member may withdraw from the association, and upon withdrawal, at the option of, and in the manner *134 determined by, the board of directors, his stock may be retired at the par or book value, whichever is less, as conclusively determined by the board of directors. Such withdrawal shall not effect any right or lien which the corporation has against the withdrawing member or his property for his indebtedness, if any, to the corporation. ARTICLE VII Capital Stock Section 1. The common stock of this corporation may be purchased, owned and/or held only by producers of agricultural products, including both landlords and tenants in share tenancy. In the event any of the common stock of this corporation shall come into the hands of any person who is not a producer of agricultural products, he shall have no right to vote by reason thereof. The corporation shall have the right to purchase any of its common stock at its par or book value, whichever is less, in the event the owner thereof is not engaged in the production of agricultural products. The common stock of this corporation may be transferred only with the consent of the board of directors on the books of the corporation, and then only to producers of agricultural products; and no purported assignment or transfer of common stock *135 shall pass to any person not eligible to hold the same, any rights or privileges on account of such stock, or in the management or affairs of the corporation. Each holder of common stock shall be entitled to only one (1) vote regardless of the number of shares held. No person shall own, either directly or indirectly, more than five percent (5%) of the issued capital stock. Non-cumulative dividends, in the nature of interest, of not to exceed eight percent (8%) per annum, may be paid upon the common stock, if as, and when declared, out of any net savings or earnings of the corporation, by the board of directors as hereinafter provided in these by-laws. Section 2. Upon the acquisition of one share of stock an eligible holder shall be entitled to all the rights of a stockholder. * * *
ARTICLE IX Distribution of Savings Section 1. The directors shall annually dispose of the savings, net margins, or earnings of this corporation in excess of its operating expenses as follows: (a) Provide for a reasonable reserve for depreciation, obsolescence, bad debts, contingent losses or expenses. (b) Out of the remaining savings a stock dividend, in the nature of interest, at a rate *136 of five percent (5%) per annum shall be declared on all outstanding stock that has not been called in for cancellation or redemption. (c) Five percent (5%) of the remaining savings must be added to, or left in, a reserve or surplus fund until such reserve or surplus fund equals twenty percent (20%) of the total capital paid in as stock, plus all unpaid participation certificates, revolving fund certificates, building certificates and certificates of interest. (d) Provide for any other reserves or funds deemed necessary or incident to good business management as shall have been determined by a resolution of the board of directors at its first regular meeting held in the first month of the fiscal year, which resolution shall fix the amount of such reserve or fund, or fix the method of computation to determine each such amount. (e) The remaining net savings shall be apportioned or distributed to the patrons of the company, both members and non-members alike, as patronage refunds, and shall be allocated or credited to the account of each patron ratably in proportion to the amount or value of goods and services sold to or bought from or handled for such patron during the fiscal year *137 involved. Such patronage refunds may be distributed at different rates upon different classes or kinds or varieties of commodities handled or services performed and based upon commodity units or dollar value as determined by the board of directors. The time, manner and method of the payment of such patronage refunds shall be determined by the board of directors, and all or any parts thereof may be deferred, and/or paid by issuing certificates of participation, and/or paid by issuing certificates of interest or building certificates, and/or paid by issuing revolving fund certificates, or credits, and/or capital stock, and/or paid in cash, or in any combination thereof as determined by the board of directors. Section 2. The patronage refunds allocated or credited to a non-member shall be held by the company until the amount is sufficient to acquire a share of stock, and thereupon, if such non-member is eligible for membership, they shall be applied toward the acquisition of a share of stock in such manner and at such time as may be determined by the board of directors. If such non-member is ineligible for membership, said amount shall be applied to the acquisition of a certificate *138 of participation with such terms and conditions as are prescribed by the board of directors, or shall be held and applied as may be determined by the board of directors. The application of patronage refunds toward the acquisition of a share of stock or a certificate shall have the same legal effect as though such patronage refunds were first paid in cash and such non-member thereupon elected to purchase such share of stock or certificate for cash. * * *
Section 4. Amounts set over to surplus and/or reserve funds from the net margins, net savings or earnings on business done in any year shall be allocated to the patrons on the books of the company on a patronage basis for that year, or in lieu thereof, the books and records of the company shall afford a means for doing so at any time, so that in the event that the board of directors in its sole discretion shall so determine, or in the event of dissolution of the corporation, such surplus and/or reserves, or any part thereof may be returned to such patrons on a patronage basis. John Klein [2] (hereinafter referred to as Klein) first became a shareholder in petitioner in 1942 and was its manager and treasurer from October 1956 *139 until January 1, 1966. Jerome Heuertz [3] (hereinafter referred to as Heuertz) became a shareholder in petitioner in 1957 and was first employed by petitioner as a bookkeeper in November 1961 and held that position until he became petitioner's manager on January 1, 1966. On September 2, 1960, petitioner filed with the district director an exemption application (Form 1028) seeking exemption under section 521. Following respondent's examination of its records and consideration of its exemption application, the district director advised petitioner by letter dated November 3, 1961, that it did not qualify for exempt status. The above-said letter states as grounds for denial to petitioner of exempt status the following: From the information furnished and examination of your records, it is apparent that the proceeds of marketing, less expenses, have not been returned to the producers. Neither is there any substantiation that all producers were and/or will be treated equally in the distribution of patronage dividends. *140 Neither is there any substantiation that the supplies and equipment were turned over to patrons at cost plus expenses, and/or that all patrons were treated equally in the distribution of patronage dividends. Section 521(b)(2) provides that an association will not be denied exemption if substantially all such stock (other than non-voting preferred without profit participation) is owned by producers who market their products or purchase their supplies and equipment through the association. A test check of your stock ownership record shows about 16% of the stock in the hands of owners who are neither marketing or purchasing through the association. Section 521(b)(3) provides that exemption will not be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. While the reserves maintained appear to be proper, there is no substantiation or record that would indicate the patrons proportionate interest in the reserves in order to comply with Section 521(b)(1) that the proper share due to patronage will be returned to them. Non-patronage income may be allocated by an exempt cooperative, *141 but to keep within the exempt status allocation of this type of income must be made on a patronage basis insofar as is practicable, to the amount of business done by or for patrons during the period to which such income is attributable. According to patronage dividend data furnished by you, non-patronage income from storage and handling has all been included in the grain income to the benefit of the grain business patrons only and excluding other patrons. Accordingly, it is held that you do not qualify for an exempt status under Section 521 of the Internal Revenue Code of 1954. In his notice of deficiency, respondent determined that for the taxable years ended December 31, 1958, 1959, 1960, and 1961, petitioner did not qualify as an exempt farmers' cooperative because (1) it did not operate on a cooperative basis as required by section 521(b)(1) of the Internal Revenue Code of 1954, (2) petitioner did not establish that substantially all of its capital stock was owned by producers who market their products or purchase their supplies and equipment through the association as required by section 521(b)(2) and applicable regulations, *142 and (3) the reserve required by Nebraska statutes and petitioner's Articles of Incorporation was neither apportioned to patrons on its books and records nor equitably allocated to its patrons as required by section 521(b)(1) and applicable regulations. With respect to each individual year, respondent added that petitioner failed to allocate income not derived from patronage on a patronage basis in proportion to the amount of business done by or for patrons. (Presumably, this cryptic assertion has reference to that portion of the district director's letter denying exemption which states: [Non]-patronage income from storage and handling has all been included in the grain income to the benefit of the grain business patrons only and excluding other patrons. Respondent also determined that since petitioner's income tax returns for the taxable years ended December 31, 1959 and 1960, were not filed within the time prescribed by law, 15 percent of the tax for the taxable year 1959 and 20 percent of the tax for the taxable year 1960 have been added thereto in accordance with the provisions of section 6651(a). Opinion Farmers' cooperatives which meet the requirements set out in section *143 521[4] are subject to the normal tax, surtax, and alternative tax, imposed upon corporations in general by sections 11 and 1201, except that in computing taxable income they are given the advantage of sweeping deductions which are not shared by cooperatives that do not meet said requirements. Exempt organizations may deduct from gross income the following: (1) all dividends paid upon capital stock of the organization during the year (section 522(b) and (2) all amounts paid (a) on a patronage basis with respect to earnings derived from business done for the United States or its agencies or from sources other than patronage and (b) as patronage dividends to patrons with respect to their business done with the cooperative. *144 If an organization does not meet the requirements for status as an "exempt farmers' cooperative," it may still receive special treatment under the tax law if it has characteristics of a cooperative. Unlike the "exempt" cooperative, the nonexempt cooperative receives no deduction on its tax returns for dividends paid on its capital stock nor does the nonexempt cooperative have any equivalent to the deduction allowed an exempt cooperative for payments or allocations to patrons from income of the association "not derived from patronage." However, a nonexempt cooperative is allowed a deduction for payments or allocations made to patrons from patronage income. Respondent has not denied that petitioner has characteristics of a cooperative association. In fact, he has stipulated that petitioner is entitled to receive the special tax advantages allowed a "nonexempt" cooperative in the event we determine that petitioner failed to qualify as an exempt farmers' cooperative under section 521. Thus, the first and major issue we must decide is whether petitioner qualified as an exempt farmers' cooperative during the years 1958, 1959, 1960, and 1961 under section 521 of the Internal Revenue Code *145 of 1954. Respondent contends that petitioner did not qualify under section 521 as an exempt farmers' cooperative during each and all of the years before us. He bases his position upon the following grounds: (1) Substantially all of petitioner's capital stock was not owned during the years 1958 through 1961 by producers who marketed their products or purchased their supplies and equipment through the organization, as required by section 521(b)(1) and (2) Petitioner was not operated as an exempt cooperative association during the years 1958 through 1961, as required by section 521(b)(1) because: (a) Petitioner did not turn back to its patrons substantial portions of its earnings for the taxable years 1958 and 1959; (b) Petitioner did not allocate patronage dividends to all of its patrons for the taxable years 1959, 1960, and 1961; and (c) Petitioner did not allocate equipment rental income for the taxable years 1960 and 1961 to the patrons by whose transactions petitioner generated such income. We will first deal with respondent's contention that "substantially all" of petitioner's capital stock was not held by the proper persons during the years in question. Section 521(b)(2) *146 provides, inter alia, that an association will not be denied exempt status merely because it has capital stock if substantially all of its capital stock is owned by producers who market their products or purchase their supplies and equipment through the association. Thus, not only must substantially all of petitioner's stock be owned by "producers," but such producers must market their products or purchase their supplies and equipment through the association. It is our understanding that the term "producer," as used in section 521, refers, among others, to farmers, fruit growers, livestock growers, and dairymen. See, Regs. section 1.521-1(a)(1). Klein's and Heuertz's definition of that term corresponds to our definition. Both testified that they knew all of petitioner's shareholders by sight and that all were producers. Their testimony was credible and unimpeached. The testimony of Edsel W. Madsen, an internal revenue agent who made respondent's initial examination of petitioner with reference to the years in question, lends support to the testimony of Klein and Heuertz in this regard. Madsen was given a list of petitioner's shareholders and asked to testify which shareholder wasn't *147 a producer to his knowledge. After a long pause, he admitted that he was unable to name any shareholder whom he did not believe to be a producer of agricultural products. Petitioner, however, went no further than to argue that substantially all of its shareholders were producers. It made no attempt to argue that its shareholder-producers were active patrons of the association during the years in issue. Nor did petitioner offer any evidence with the purpose of proving this point. Consequently, although we find that substantially all, if not all, of petitioner's shareholders were producers during the years in issue, we cannot find that substantially all of petitioner's shareholders were active producers, that is - producers who marketed their products or purchased their supplies and equipment through the association. The mere fact that petitioner's bylaws state that a member may be suspended or may have his membership terminated if he shall cease to be a producer or shall cease or refuse to market agricultural products through the facilities of the corporation does not satisfy petitioner's burden of proof in the absence of any evidence to show that the policy of the bylaws was enforced. *148 In failing to prove that all its producer-shareholders were active patrons during the years in issue, we hold that petitioner has not met the requirements of section 521(b)(2) and, accordingly, fails to qualify as an exempt farmers' cooperative. Therefore, we hold for respondent on this issue with respect to all the years before us. The second issue for decision involves receipts for grain storage in the amount of $7,832.70 which was received by petitioner, an accrual basis taxpayer, in 1959 but which petitioner included in its taxable income for 1960. Respondent submits that these receipts are properly taxable to petitioner in 1959, the year of receipt. On brief, petitioner has either conceded this issue or misconstrues respondent's position and, consequently, fails to proffer any relevant arguments against respondent. [5] What we must decide is whether petitioner may defer the inclusion in taxable income of the storage receipts until 1960, as it did in fact. Besides the *149 lack of any argument supporting petitioner's deferral of the storage income item, the evidence on this issue is too meager to cast even the slightest doubt on respondent's presumption of correctness. Moreover, as alluded to above, petitioner appears to have conceded this item's inclusion into taxable income for 1959. On the basis of the foregoing, we believe that the storage receipts were taxable in 1959. Accordingly, we hold for respondent on this issue. The final issue for decision is whether petitioner, as a nonexempt farmers' cooperative, is liable for additions to tax under section 6651(a) for the years 1959 and 1960. Section 6651(a) provides that if a return is filed at some time, the failure to file the return on time will not be asserted if it is shown that such failure is due to reasonable cause and not to wilful neglect. A nonexempt farmers' cooperative association whose returns are made on the basis of a calendar year is required to file its return on or before the 15th day of March following the close of the calendar year. Section 6072(b). An exempt farmers' cooperative whose returns are made on the basis of a calendar year is required to file its returns on or *150 before the 15th day of September following the close of the calendar year. Section 6072(d). An automatic extension of three months for filing of corporate income tax returns is provided for by section 6081(b). Pursuant to applications therefor, petitioner was granted extensions of time for filing its income tax returns for the taxable years 1959 and 1960 to June 15, 1960, and June 15, 1961, respectively. Its returns for the taxable years 1959 and 1960 were filed on September 8, 1960, and September 18, 1961, respectively. Respondent contends that if we decide petitioner is not an exempt farmers' cooperative, respondent's determination that petitioner is liable for additions to tax under section 6651(a) for the years 1959 and 1960 should be sustained. At no point during the course of the present proceedings did petitioner direct its attention to this issue. We must decide whether petitioner's apparent belief that it qualified as an exempt farmers' cooperative within the meaning of section 521 is sufficient cause for its failure to file within the time required for filing of returns by nonexempt cooperatives. This question has been presented before this Court with relative frequency *151 and, in each instance, we held unequivocally that a good faith belief that an organization is exempt is not reasonable cause for failure to file its returns on time. See, Knollwood Memorial Gardens, 46 T.C. 764 (1966), (on appeal CA-7, Jan. 25, 1967); William L. Powell Foundation, 21 T.C. 279 (1953), reversed on another issue 222 F. 2d 68 (C.A. 7, 1955). Consequently, we hold for respondent on this issue. Decision will be entered under Rule 50. Footnotes
1. Respondent's argument herein that petitioner was not an exempt farmers' cooperative is limited to two grounds - to wit, (1) substantially all of petitioner's capital stock was not owned by producers who marketed their products or purchased their supplies and equipment through the association and (2) petitioner was not operated on a cooperative basis. Respondent, on brief, has abandoned the argument that petitioner does not qualify as an exempt farmers' cooperative because its reserves were neither allocated nor apportioned to its patrons, as required by section 521(b)(1)↩.
2. At the time of trial herein, Klein had resided in Roseland for approximately 62 years. ↩
3. At the time of trial herein, Heuertz had resided in Roseland for 25 years.↩
4. SEC. 521. EXEMPTION OF FARMERS' COOPERATIVES FROM TAX. (a) Exemption from Tax. - A farmers' cooperative organization described in subsection (b) (1) shall be exempt from described in subsection (b)(1) shall be exempt from taxation under this subtitle except as otherwise provided in section 522. Notwithstanding section 522, such an organization shall be considered an organization exempt from income taxes for purposes of any law which refers to organizations exempt from income taxes. (b) Applicable Rules. - (1) Exempt Farmers' Cooperatives. - The farmers' cooperatives exempt from taxation to the extent provided in subsection (a) are farmers', fruit growers', or like associations organized and operated on a cooperative basis (A) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (B) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses. (2) Organizations Having Capital Stock. - Exemption shall not be denied any such association because it has capital stock, if the dividend rate of such stock is fixed at not to exceed the legal rate of interest in the State of incorporation or 8 percent per annum, whichever is greater, on the value of the consideration for which the stock was issued, and if substantially all such stock (other than nonvoting preferred stock, the owners of which are not entitled or permitted to participate, directly or indirectly, in the profits of the association, upon dissolution or otherwise, beyond the fixed dividends) is owned by producers who market their products or purchase their supplies and equipment through the association. (3) Organizations Maintaining Reserve. - Exemption shall not be denied any such association because there is accumulated and maintained by it a reserve required by State law or a reasonable reserve for any necessary purpose. (4) Transactions with Nonmembers. - Exemption shall not be denied any such association which markets the products of nonmembers in an amount the value of which does not exceed the value of the products marketed for members, or which purchases supplies and equipment for nonmembers in an amount the value of which does not exceed the value of the supplies and equipment purchased for members, provided the value of the purchases made for persons who are neither members nor producers does not exceed 15 percent of the value of all its purchases. (5) Business for the United States. - Business done for the United States or any of its agencies shall be disregarded in determining the right to exemption under the section.↩
5. Petitioner appears to assume that respondent is challenging its deferral of the storage income item on the grounds that such procedure evidences petitioner's failure to operate on a cooperative basis.↩